# EXHIBIT D

## COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.

Superior Court Department
of the Trial Court.

---

JUSTIN QUINN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

VICTORIA NYC 1 INC., d/b/a Rx2Go, RX2GO MA INC., ERKIN SATTAROV, and DONIYOR SATTAROV, individually,

Defendants.

Case No. _____

---

## CLASS ACTION COMPLAINT

### I.  Introduction

1.    Justin Quinn worked for Victoria NYC 1 Inc. (d/b/a Rx2Go), Rx2Go MA Inc., and their owners and officers Erkin Sattarov and Doniyor Sattarov (collectively, "Rx2Go") in Massachusetts as a prescription medication delivery person.[1] He brings this action against Rx2Go asserting several violations of Massachusetts' wage and employee protection laws.

2.    Specifically, Quinn contends that Rx2Go misclassified him and numerous other couriers who performed medication delivery in Massachusetts as "independent contractors" in violation of the Massachusetts independent contractor statute, M.G.L. c.

---

[1] For purposes of this Complaint, and unless otherwise specified, Quinn will use the term "courier" to refer to Rx2Go's medication prescription delivery person.

149, § 148B, and failed to pay them wages earned under the Massachusetts Wage Act,

M.G.L. c. 149, § 148.

3.      In addition, for himself individually, Quinn contends that Rx2Go terminated

his employment in retaliation for having asserted his wage rights under Massachusetts

law, in violation of the Wage Act's anti-retaliation provision at M.G.L. c. 149, § 148A, and

failed to timely pay him his final wages in violation of the Wage Act, M.G.L. c. 149, § 148.

4.      Quinn brings his class claims pursuant to Massachusetts Rule of Civil

Procedure 23 and the private enforcement provision of the Wage Act, M.G.L. c. 149, § 150.

Quinn seeks certification of the following class:

> All individuals who have performed prescription pharmaceutical delivery services
> as purported "independent contractors" for Rx2Go in Massachusetts during the
> statutory period applicable to this action.

5.      On behalf of the proposed class, Quinn seeks to recover compensatory

damages; automatic trebling; pre- and post-judgment interest; and attorneys' fees and

costs. For his individual claims, Quinn seeks to recover restitution for all damages arising

from his termination and Rx2Go's late payment of his final wages; automatic trebling; pre-

and post-judgment interest; and attorneys' fees and costs.

## II.  Jurisdiction + Venue

6.      The Superior Court has jurisdiction over this matter pursuant to M.G.L. c.

212, § 3, because this is a civil action for money damages where there is no reasonable

likelihood that Plaintiff will recover an amount less than or equal to $50,000.

7.      Venue is proper in Suffolk County pursuant to M.G.L. c. 223, § 1, because this is a transitory action and because Rx2Go maintains a usual place of business in Suffolk County, specifically, in Hyde Park, Massachusetts.

### III. **The Parties**

8.      Justin Quinn is an adult resident of Groton, Massachusetts. From September 2023 to about December 23, 2023, Quinn performed prescription medication delivery as a courier for Rx2Go in Massachusetts.

9.      Pursuant to Rule 23 and M.G.L. c. 149, § 150, Quinn seeks to represent the following class:

> All individuals who have performed prescription pharmaceutical delivery services as purported "independent contractors" for Rx2Go in Massachusetts during the statutory period applicable to this action.

10.     Victoria NYC 1 Inc. ("Victoria NYC") is a foreign corporation organized under the laws of the State of New York. It operates under the name "Rx2Go" and maintains a mailing address at 6921 8th Avenue in Brooklyn, New York, and an office at 173 54th Street in Brooklyn, New York.

11.     Rx2Go MA Inc. ("Rx2Go MA") is a domestic corporation organized under the laws of the Commonwealth of Massachusetts. On information and belief, Rx2Go MA is a wholly owned subsidiary of Victoria NYC. It maintains its principal office at 100 Business Street in Hyde Park, Boston.

12.     Erkin Sattarov is an adult individual and the chief executive officer of Victoria NYC. Erkin Sattarov describes himself as:

a dentist-turned-entrepreneur with a passion for using technology to revolutionize the healthcare industry. After graduating with an associate's [sic] degree in dentistry from Medical College in 2015, I founded Rx2Go, a top-ranked courier company specializing in medication deliveries, serving over 300+ active pharmacies and hospitals across five states.

13.     Doniyor Sattarov is an adult individual and the president, treasurer, secretary, and director of Rx2Go MA.

### IV. **Statement of Facts**

14.     Victoria NYC and Rx2Go MA are affiliated corporate entities that operate jointly and severally under the trade name "Rx2Go."

15.     Rx2Go is a "pharmacy courier service," meaning it provides prescription medication delivery services to patients.

16.     In order to provide medication delivery services, Rx2Go hires individuals to act as couriers to transport medication to patients at their homes, apartments, workplaces, school campuses, assisted living facilities, and the like.

17.     Rx2Go requires its couriers to use their personal vehicles in making medication deliveries.

18.     Rx2Go hired Quinn as a courier in September 2023.

19.     Quinn used his personal vehicle to perform medication deliveries for Rx2Go throughout Massachusetts.

20.     Rx2Go requires its couriers to pay all expenses associated with performing delivery services using their personal vehicles, such as gas, tolls, and maintenance.

21.     Quinn paid all transportation expenses associated with his delivery work for Rx2Go, including gas, tolls, insurance, and maintenance on his personal vehicle.

22.     Rx2Go provides its couriers with no benefits, such as paid vacation, sick time, or business expense reimbursement.

23.     Rx2Go requires new couriers to sign a contract styled as an "Independent Contractor Agreement" (the "Agreement").

24.     Quinn signed a copy of Rx2Go's Agreement on September 22, 2023. A copy of this Agreement is attached as **<u>Exhibit 1</u>**.

25.     Rx2Go classifies the individuals whom it hires to work as couriers as independent contractors, rather than as employees.

26.     Rx2Go's classification of the couriers as independent contractors is embodied in section 2 of the Agreements it requires couriers to sign:

> **Relationship of Parties.** The relationship between the Contractor and the Company is independent. The contractor shall be an independent contractor hired to perform specific services, as required by the company. This Agreement does not create any agency, partnership, or joint venture. Additionally, this contract does not create an employer-employee relationship.

27.     Notwithstanding this provision, and notwithstanding their purported status as "independent contractors," Rx2Go's couriers are, as a matter of law, employees.

28.     Rx2Go retains substantial control over the work performed by the couriers, both under its contract with the couriers and in fact. For example, Rx2Go:

a.      determines what deliveries the couriers will make;

b.      determines what areas of Massachusetts couriers will be "responsible" for;

c.      determines the rate, method, and timing of the couriers' compensation;

d.      informs couriers in their Agreements that they will only be permitted to continue working for Rx2Go "as long as the [couriers'] services ... are satisfactory to [Rx2Go]";

e.      maintains the couriers' pay and "attendance" records;

f.      requires couriers to acknowledge that they "owe[] a fiduciary duty of loyalty, fidelity and allegiance to act at all times in the best interest of [Rx2Go]";

g.      prohibits couriers from making negative oral or written public statements about Rx2Go during the period of the couriers' service;

h.      requires couriers to treat its certain company information as confidential even after termination of the couriers' services;

i.      prohibits couriers from competing directly or indirectly with Rx2Go during the period of the couriers' service and for three years thereafter;

j.      prohibits couriers from soliciting Rx2Go's clients for additional business or work of a similar nature as the work performed for Rx2Go;

k.      imposes numerous fines on couriers for failing to adhere to company guidelines or policies, including $1,000 for failing to return an undelivered package on time; $1,000 for showing up late for an assignment; and $1,000 for performing other deliveries for other companies while working for Rx2Go;

l.      requires couriers to give at least 30 days' notice before resigning;

m.      establishes "for cause" criteria for couriers' termination; and

n.      requires couriers to return all tools, equipment, and materials provided by Rx2Go upon termination.

29.     Rx2Go's couriers perform a service that falls squarely within Rx2Go's usual course of business; indeed, Rx2Go would not be able to provide medication delivery without its couriers.

30.     Rx2Go's couriers do not work in an independently established trade, occupation, or business as medication couriers.

31.     Quinn had never performed medication delivery prior to working for Rx2Go and does not maintain an independently established business to do so now.

32.     In fact, Rx2Go prohibits its couriers from attempting to provide medication delivery services for anyone other than Rx2Go during the term of their service and for a period of time thereafter.

33.     Rx2Go's investment in its business far outstrips any investment the couriers could make in the work they perform.

34.     All the client management and IT infrastructure required to operate its medication delivery service is owned and maintained by Rx2Go.

35.     The couriers' investment in their "business," meanwhile, is limited to the cost of their personal vehicles and the time they spend working.

36.     Rx2Go paid Quinn $220 per day for his work making deliveries, irrespective of how many hours he spent driving.

37.     Rx2Go did not provide Quinn or its other couriers with regular pay statements or paychecks identifying hours worked or compensation received.

38.     Rx2Go typically assigned Quinn between 20 and 30 deliveries per day.

39.     Initially, Rx2Go assigned Quinn to make deliveries that were reasonably proximate to Rx2Go's office and Quinn's residence.

40.     In November 2023, however, Rx2Go started assigning Quinn to make deliveries outside his usual area, including to patients located in distant parts of Massachusetts.

41.     At the same time, Rx2Go started assigning more deliveries to Quinn; approximately 32 to 42 per day.

42.     Due to the extra time and distance required by these remote assignments, Quinn requested that Rx2Go raise his daily rate of pay. Rx2Go refused.

43.     Quinn raised the prospect of a pay raise based on the expansion of his delivery area on several occasions thereafter; Rx2Go rebuffed him.

44.     Quinn also raised objections with Rx2Go's management concerning the way Rx2Go was treating him and its other couriers with respect to their hours worked, assignments, and compensation.

45.     On a number of occasions, Quinn raised with Rx2Go's management that Rx2Go may be violating Massachusetts' wage laws because those laws are different than the ones with which Rx2Go's ownership may be familiar.

46.     Following his request for a raise and objection to the couriers' working conditions, Rx2Go informed Quinn that he needed to "stop complaining" or the company would stop giving him work.

47.     Rx2Go followed through with this threat as Quinn continued protesting his and the couriers' compensation and working conditions; it stopped assigning Quinn

deliveries and redrew delivery zones in such a way as to exclude Quinn from receiving work.

48.     In particular, Doniyor Sattarov informed Quinn on one such occasion that he would be giving some of Quinn's shifts to other couriers who "don't complain."

49.     On December 23, 2023, Rx2Go terminated Quinn's employment without notice or explanation.

50.     Rx2Go did not provide Quinn with his paycheck for his final wages on the date of his termination. Instead, he received it about two weeks later, on January 5, 2024.

51.     Subsequently, on or about January 11, 2024, Rx2Go issued Quinn another check, this one for $51, which was intended to compensate him for wages Rx2Go failed to pay him three pay periods prior.

**V.  Administrative Filing**

52.     Pursuant to M.G.L. c. 149, § 150, Quinn has filed his statutory claims with the Massachusetts Office of the Attorney General's Fair Labor Division.

**VI. Class Allegations**

53.     Quinn brings this action pursuant to Mass. R. Civ. P. 23 and M.G.L. c. 149, §§ 148 and 150, on behalf of himself and all other individuals who have performed prescription pharmaceutical delivery services as purported "independent contractors" for Rx2Go in Massachusetts during the statutory period applicable to this action.

54.     The members of the proposed class are so numerous that joinder of all of them is impracticable. The size of the proposed class is estimated to exceed 30 individuals during the statutory period based on high turnover among couriers. Joinder of all such

individuals, who may live in Massachusetts and other nearby states, would be inefficient and uneconomical.

55.     Quinn's class claims for independent contractor misclassification and failure to pay wages is the same as the claims of the other putative class members because Rx2Go's policy of classifying the proposed class members as independent contractors is uniform among those class members, as is their related claim for failure to pay wages under the Wage Act.

56.     Common questions of law and fact concerning the claims of the proposed class members predominate over any questions affecting individual class members, including whether Rx2Go's classification and compensation policies complied with Massachusetts law.

57.     Quinn and the putative class members suffered similar losses, injuries, and/or damages on account of Rx2Go's consistent practice of failing to adequately reimburse its couriers for all transportation expenses and failing to pay benefits that Rx2Go affords to its employees.

58.     The relief sought by Quinn is typical of the relief which could be sought by each member of the proposed class in separate actions.

59.     Quinn will adequately protect the interests of the putative class members and has retained counsel who is qualified and experienced in the prosecution of wage-and-hour class actions. Neither Quinn nor his counsel have interests that are contrary to, or conflicting with, the interests of the members of the proposed class.

60.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for the proposed class members to prosecute individual actions on their own; indeed, current employees of Rx2Go may avoid doing so due to the fear of reprisal. Prosecution of this case as a class action will also eliminate the possibility of duplicative lawsuits being filed in other courts in Massachusetts.

61.     This case will be manageable on a class basis. Quinn and his counsel know of no unusual difficulties in this case. Moreover, Rx2Go likely possesses time records, payroll data, and compensation reports from which the putative class members' damages may be ascertained.

## **COUNT I**
### Independent Contractor Misclassification
### M.G.L. c. 149, § 148B
### *(Class Claim)*

62.     Quinn incorporates by reference all the preceding paragraphs set forth in this Complaint.

63.     The Massachusetts independent contractor statute, M.G.L. c. 149, § 148B, provides that any individual performing any service for another shall be considered an employee unless the putative employer can demonstrate that:

> (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and

> (2) the service is performed outside the usual course of the business of the employer; and,

(3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

64.     As set forth herein, Rx2Go has violated the Massachusetts independent contractor statute by misclassifying its couriers as independent contractors because it cannot satisfy any part of the statutory test for independent contractor status.

65.     As a result of their misclassification as independent contractors, Rx2Go's couriers have not received all the wages and benefits to which they are entitled.

66.     Quinn brings this claim on behalf of himself and all others similarly situated pursuant to Rule 23 and M.G.L. c. 149, § 150.

## COUNT II
Failure to Pay Wages
M.G.L. c. 149, § 148
*(Class Claim)*

67.     Quinn incorporates by reference all the preceding paragraphs set forth in this Complaint.

68.     The Massachusetts Wage Act, M.G.L. c. 149, § 148, provides that employers must pay their employees all wages earned within certain specified time periods.

69.     As used in the Wage Act, the term "wages" means both monetary compensation for work performed and certain benefits.

70.     The regulations governing wage payments in Massachusetts, 454 CMR § 27.00, *et seq.*, provide that:

An employee required or directed to travel from one place to another after the beginning of or before the close of the work day shall be compensated for all travel time and shall be reimbursed for all transportation expenses.

454 CMR R § 27.04(4)(d).

71.     As set forth herein, by failing to reimburse Quinn and its other couriers for their work-related transportation expenses, Rx2Go has violated the Wage Act.

72.     In addition, by failing to pay Quinn and its other couriers the benefits that Rx2Go provides to its employee workforce, Rx2Go has denied Quinn and its couriers in Massachusetts all their wages earned.

73.     Quinn brings this claim on behalf of himself and all others similarly situated pursuant to Rule 23 and M.G.L. c. 149, § 150.

## COUNT III
Retaliation
M.G.L. c. 149, § 148A
*(Quinn Only)*

74.     Quinn incorporates here by reference all the preceding paragraphs set forth in this Complaint.

75.     The Massachusetts anti-wage retaliation statute, M.G.L. c. 149, § 148A, provides that "[n]o employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of this chapter."

76.     As set forth herein, Rx2Go refused to assign work to Quinn, and later terminated his employment, due to his assertion of rights under the Wage Act, namely, advocating for himself and his fellow couriers concerning the manner in which Rx2Go was classifying, compensating, and treating them.

77.     Quinn brings this claim on behalf of himself, individually, pursuant to M.G.L. c. 149, § 150.

## COUNT IV
### Failure to Timely Pay Wages
### M.G.L. c. 149, § 148
### *(Quinn Only)*

78.     Quinn incorporates here by reference all the preceding paragraphs set forth in this Complaint.

79.     The Massachusetts Wage Act, M.G.L. c. 149, § 148, provides that "any employee discharged from [...] employment shall be paid in full on the day of his discharge."

80.     Rx2Go did not pay Quinn his final wages on the day of his discharge. Instead, Rx2Go paid him his final wages several weeks later.

81.     By failing to pay Quinn all his earned wages on the date of his discharge, Rx2Go has violated the Wage Act.

82.     Quinn brings this claim on behalf of himself, individually, pursuant to M.G.L. c. 149, § 150.

## VII.    Prayer for Relief

With respect to Counts I and II, Quinn respectfully requests this Court enter the following relief as to himself and the proposed class:

1.     class certification pursuant to Mass. R. Civ. P 23;

2.     Quinn's designation as class representative and the undersigned counsel as class counsel;

3.      compensatory damages for all statutory wages owed to Quinn and the putative class members;

4.      treble damages;

5.      pre- and post-judgment interest;

6.      attorneys' fees and costs; and

7.      such other relief as this Court deems just and proper.

With respect to Counts III and IV, Quinn respectfully requests that the Court enter the following relief for himself, individually:

8.      all wages and benefits lost as a result of Rx2Go's retaliatory conduct, including treble damages under M.G.L. c. 149, § 150;

9.      double damages on the late payment of his final wages;

10.      pre- and post-judgment interest;

11.      attorneys' fees and costs; and

12.      Such other relief as this Court deems just and proper.

Respectfully submitted,

JUSTIN QUINN, individually and on behalf of all others similarly situated,

By their attorney,


 /s/ Brant Casavant

Brant Casavant, BBO #672614

FAIR WORK P.C.

192 South Street, Suite 450

Boston, MA 02111

Tel.     (617) 231-6777

Fax.     (617) 488-2261

brant@fairworklaw.com


Dated: February 6, 2024.

# Exhibit 1

# INDEPENDENT CONTRACTOR
# AGREEMENT

**AGREEMENT**, dated 9/22/2023 between Victoria NYC 1 Inc DBA Rx2Go., a New York corporation, having an address at 173 54th, Brooklyn NY 11220 ("Company"), and Justin Quinn, having an address at ███████ Groton, MA, 01450 ("Contractor").

# W I T N E S S E T H:

**WHEREAS**, the Company desires to employ Contractor and Contractor desires to be employed by the Company upon the terms and conditions hereinafter set forth;

**NOW THEREFORE**, in consideration of Ten Dollars, and other valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto agree as follows:

## ARTICLE 1: RESPONSIBILITIES, DUTIES, AND LEGAL COMPLIANCE

1.01 **Agreement to hire and Acceptance of services**. Company hereby hires Contractor, and Contractor hereby accepts this contract in order to provide services, namely as a Pharmacy Delivery driver upon the terms and conditions set forth in this Agreement. Contractor agrees to perform diligently and to the best of his abilities the duties and responsibilities appertaining to the position as reasonably directed by the Company. Contractor shall perform all other reasonable duties assigned by the Company and comply with all other reasonable instructions issued by the Company.

1.02 **Duties and Responsibilities**. Contractor is responsible for timely delivery of the filled prescription medication to various individual patients of the pharmacies doing business with RX2GO, serviced by the Contractor. Contractor must deliver all packages of medications disbursed to him during one work shift. Contractor must obtain the signature of the patient/recipient and collect co-pays where applicable. Contractor must wear a uniform (ID, Mask, cap and t-shirt/vest), and cannot take the Company identified clothing off time off during deliveries for RX2GO. Contractor shall be responsible for traffic and parking violation fines incurred whether or not the it was during services provided for RX2GO, or otherwise during delivery regardless of time. Drivers are required to maintain a valid driver's license, appropriate vehicle insurance, and any other required licenses or permits, and be responsible for any damage to their motor vehicle and will be responsible for covering any and all losses that may occur whether to vehicles, persons, and/or products being delivered. Every driver or delivery person who uses the RX2GO platform has a responsibility to drive safely and follow the established rules of the road. RX2GO has a zero-tolerance policy for the use of alcohol or drugs by driver. If we receive reports of suspected impaired driving, the driver or delivery person may be terminated immediately and a lawsuit may be filed for jeopardizing the Company and Patient. CONTRACTOR SHALL BE RESPONSIBLE FOR THE SAFE HANDLING OF THE PACKAGES, MEDICINES, AND PHARMECEUTICALS, AND DAMAGES RESULTING FROM THE CONTRACTOR'S/DRIVERS NEGLIGENCE SHALL BE THE DRIVERS RESPONSIBILITY AND RX2GO MAY INSTITUTE A LAWSUIT FOR DAMAGES OR OTHERWISE REQUEST INDEMNIFICATION AND/OR CONTRIBUTION DAMAGES AS AGAINST THE CONTRACTOR/DRIVER.

1.03   The contractor and/or subcontractor shall take all reasonable safety precautions with respect to its Work, shall comply with all safety measures so as to prevent liabilities and must be compliant with all applicable laws, ordinances, rules, regulations and orders of any and all governmental entity and the state laws of where the services are being provided. Any of Contractor's or Contractor's employee(s) directly or indirectly providing services for RX2GO may be required, at Company's discretion, to submit to a drug/alcohol screen at the time. The contractor herein confirms that it is in compliance for all the legal requirements of the State that the services are being provided for RX2GO and in compliance with all Federal Laws. The Contractor holds harmless and indemnifies RX2GO and all its officers, representatives, agents, employees, owners and staff if there is any violation under this paragraph and shall be responsible for paying RX2GO's legal fees in the event RX2GO has to defend any legal action taken against RX2GO for acts and/or omissions of the Contractor.

## ARTICLE 2: NATURE AND TERM OF SERVICES FOR HIRE

2.01   **Term/time period for services provided**. The parties to this Agreement agree that the nature of the relationship is a casual "as required" relationship. Company agrees to  provide reasonable notice to Contractor regarding when he/she will be requested to perform duties and Contractor agrees to take reasonable steps to be available for work during the   specified time. The services of Contractor shall start on 9/22/2023     . The services of Contractor shall continue only as long as the services of Contractor are satisfactory to the Company, notwithstanding any other provisions of this Agreement. Company shall be the sole judge as to whether the services of the Contractor are satisfactory. The Contractor understands and acknowledges that the Contractor serves at the pleasure of the Company and that his       services are at will. Nothing in this Agreement shall prevent, limit or otherwise interfere with the right of the Company to terminate the services of the Contractor at any time.

2.02   **Relationship of Parties.** The relationship between the Contractor and the Company is independent. The contractor shall be an independent contractor hired to perform specific services, as required by the company. This Agreement does not create any agency, partnership, or joint venture. Additionally, this contract does not create an employer-employee relationship.

2.03   **Hours of Work**. The parties agree that because Contractor is being Hired on an as required basis, the Contractor has no fixed hours of work, other than what is required to fulfill the delivery requirements of the Company.

## ARTICLE 3: COMPENSATION

3.01   **Rate as accepted on application RX2GO**. Company shall pay to the Contractor, for services rendered, an amount as accepted on the application RX2GO. Contractor, by accepting the delivery accepts the rate to be paid as reasonable and fair compensation for the services provided. Company shall not be responsible for any expenses incurred by Contractor in connection with the performance of the Services, including, but not limited to, gas, tolls, and other transportation-related expenses.

3.02   **Date and Method of Payment**. Contractor's pay shall be paid on a bi-weekly basis and processing will take seven (7) business days (thus payments will always be approximately one week behind). Company is not responsible for any delays stemming from other institutions such as banks. The compensation paid by Company to Contractor will be a 1099 form without withholding of applicable federal, state and local withholding taxes and payroll taxes and such other deductions as may be required by law.

3.03 **No Overtime Pay.** Contractor acknowledges that it is an independent contractor and not an employee of Company. As such, Contractor shall not be entitled to any overtime compensation or any other form of employee benefits from Company.

3.04 **Pay Records**. Companies shall maintain proper and accurate attendance and pay records, and shall provide the Contractor with a clear statement of earnings and deductions with each pay period.

## ARTICLE 4: HEALTH AND SAFETY

4.01 **General Health and Safety Obligations**. Both Company and Contractor shall comply with their obligations under applicable law relating to health and safety at a workplace. This includes companies taking all practicable steps to provide Contractor with a healthy and safe working environment. Contractor shall comply with all directions and instructions from Company regarding health and safety and shall also take all reasonable steps to      ensure that in the performance of his services he does not undermine his own health and safety or the health and safety of any other person. Contractor shall familiarize himself with Contractor's health and safety policies, and any modifications to those policies that may be introduced from time to time.

## ARTICLE 5: OTHER SERVICES PROVIDED--FOR HIRE OBLIGATIONS--NON-DISCLOSURE/--CONFIDENTIALITY--HIPACOMPLIACE/NON-COMPETE--CONFLICTS OF INTEREST

5.01 **No Other Services provided**. During the term of this Agreement Contractor shall not, except as agreed to in writing by Company, engage, directly or indirectly, in any other business, investment or activity that interferes with the performance of Contractor's duties hereunder, is contrary to the interest of Company or any of its affiliates, or requires any significant portion of Contractor's business time that may conflict with performing the Contractor's duties for the Company. Contractor shall not provide services for, work for or accept or receive any payment, compensation or consideration from any other organization, firms, corporation, association, society, person or other entity for services performed or to be performed by Contractor that conflicts with the Company. Company shall be the sole judge as to whether the services of the Contractor are satisfactory. The Contractor understands and acknowledges that the Contractor serves at the pleasure of the Company and that his  services are at will. Nothing in this Agreement shall prevent, limit or otherwise interfere with the right of the Company to terminate the services of the Contractor at any time, and if applicable, to sue for damages related to improper competition or otherwise those that were incurred by RX2GO as a breach of the conditions set forth herein.

5.02 **Duty of Loyalty**. Contractor acknowledges and agrees that Contractor owes a fiduciary duty of loyalty, fidelity and allegiance to act at all times in the best interest of the Company and to do no act which would injure the business, interests or reputation of Company or any of its affiliates. In keeping with these duties, Contractor shall make full disclosure of all business opportunities pertaining to Contractor or any of its affiliate's business and shall not appropriate for Contractor's own benefit any such business opportunity.

5.03 **Statements Concerning Contractor**. Contractor shall refrain, both during the "Services provided" relationship and after the termination of the "Services provided" relationship, from publishing any oral or written statements about Company or any of its affiliates or any officers, Contractors, agents or representatives thereof that are slanderous, libelous or defamatory, or that constitute an intrusion into the private lives or personal affairs of any of the foregoing, or that give rise to unreasonable or unfavorable publicity regarding any of the foregoing, or that constitute a misappropriation of the name or

3

likeness of any of the foregoing.

    5.04    **Confidential Information and Trade Secrets**. Contractor shall not, whether during the term of Services provided or after its termination for whatever reason, make any unauthorized disclosure of any confidential information or trade secrets of Company or any of its affiliates, or make any use thereof except in the carrying out of Contractor's duties hereunder. Contractor shall keep all confidential information and trade secrets of Company and its affiliates in strict confidence, and shall not misuse, misappropriate, give, sell, disclose or impart any confidential information or trade secrets to any person, firm, corporation or other entity, other than as is necessary for the proper performance of his duties under this Agreement, or required by law, or consented to in writing by Company. Confidential information and trade secrets include, without limitation, all proprietary software and system designs owned by or licensed to Contractor or any of its affiliates, the marketing plans of Company and its affiliates, the prices of Company or any of its affiliates obtains or has obtained or at which Company or any of its affiliates sells or has sold products or services, compensation paid to Contractors, all confidential  information and trade secrets provided to Contractor or any of its affiliates by customers or vendors, all financial statements and other information relating to the financial condition of Contractor and its affiliates, and all information relating to research and development activities, ideas or projects of Company or any of its affiliates. Contractor agrees to preserve and protect the confidential information and trade secrets of third parties to the same extent and on the same basis as the confidential information and trade secrets of Company. All files, records, documents, memoranda, note, books, databases, drawings, email, voice mail, specifications, computer programs, mechanisms, devices, equipment or other items in any manner affecting or relating to the business of Contractor or any of its affiliates, whether or not they are prepared by Contractor, or come into Contractor's possession in any other way and whether or not they contain or constitute trade secrets owned by Company or any of its affiliates, are and shall remain the exclusive property of Company and its affiliates and shall not be copied or otherwise duplicated or remove from the premises of Company or any of its affiliates under any circumstances whatsoever without the prior written consent of Company in each instance. A trade secret is any information, process or idea that is not generally known to persons outside of Company and its affiliates, which Company considers confidential, and which gives Contractor or any of its affiliates a competitive advantage. All information, ideas, concepts, improvements, discoveries and inventions, whether patentable or not, which are conceived, made, developed or acquired by Contractor individuals or in conjunction with others during the Services provided of Contractor by Company, whether or not during working hours or on Company's premises, which relate to Company's business, products or services, shall be disclosed by Contractor to Company and shall be the sole and exclusive property of Company.

    5.05    **Protection of confidential information/non-disclosure**. The Recipient understands and acknowledges that the Confidential Information has been developed or obtained by the Owner and/or Company by the investment of significant time, effort and expense, and that the Confidential Information is a valuable, special and unique asset of the Owner and/or Company which provides the Owner and/or Company with a significant competitive advantage, and needs to be protected from improper disclosure. In consideration for the receipt by the Recipient of the Confidential Information, the Recipient agrees as follows:

        **A. No Disclosure**. The Recipient will hold the Confidential Information in confidence and will not disclose the Confidential Information to any person or entity without the prior written consent of the Owner and/or Company. Contractor agrees to hold in strict confidence and proprietary confidential information of the company that becomes known to contractor in the Course of performing the services. Contractor shall not disclose, use, or permit others to use such information without prior written consent of the company

4

**B**. **No Copying/Modifying.** The Recipient will not copy or modify any Confidential Information without the prior written consent of the Owner and/or Company.

**C. Unauthorized Use.** The Recipient shall promptly advise the Owner and/or Company if the Recipient becomes aware of any possible unauthorized disclosure or use of the Confidential Information.

**D**. **Application to individuals providing services on behalf of the Company.** The Recipient shall not disclose any Confidential Information to any employees of the Recipient, except those employees who are required to have the Confidential Information in order to perform their job duties in connection with the limited purposes of this Agreement. Each permitted employee to whom Confidential Information is disclosed shall sign a non-disclosure agreement substantially the same as this Agreement at the request of the Owner and/or Company.

5.06        **Work For Hire.** All ideas, inventions, developments, improvements and other work conceived or produced by Company, alone or with others, during the Services provided of  Contractor hereunder, whether or not during working hours or on Company premises, that are within the scope of Company's business operations or relate to any of work or projects of Company or any of its affiliates, are the exclusive and sole property of Company and its affiliates. The parties agree that all such work constitutes "works made for hire" under United States copyright laws. Contractor agrees to assist Company and its affiliates, at the expense of Company, to obtain patents or copyrights on any such patentable or copyrightable work and to protect the worldwide right, title and interest of Company and its affiliates in all forms of intellectual property. Contractor agrees to execute all documents necessary to obtain such patents or copyrights in the name of Company or any of its affiliates including without limitation all formal assignment documents requested by Company or any of its affiliates and the execution of all lawful oaths and applications for patents and registration of copyright in the United States and foreign countries.

5.07     **Conflicts of Interest**. It is agreed that any direct or indirect interest in, connection with, or benefit from any outside activities, particularly commercial activities, may adversely affect the Company or any of its affiliates and may involve a conflict of interest. Contractor shall not directly or indirectly knowingly become involved in or engage in any activity which conflicts with the interests of Company or any of its affiliates. Contractor shall not, either personally or as an Contractor, consultant or agent for any other entity or person, carry on or invest in any business in competition with Company or any of its affiliates. If, while performing his duties and responsibilities under this Agreement, Contractor becomes aware of any potential or actual conflict between his interests and those of Company or any of its affiliates, then Contractor shall immediately inform the Company. Where a Company forms the view that such a conflict does or could exist, it may direct the Contractor to take actions to resolve that conflict, and the Contractor shall comply with those directions. When acting in his capacity as a Contractor, the Contractor shall not, either directly or indirectly, receive or accept for his own benefit or the benefit of any person or entity other than the Company or any of its affiliates any gratuity, emolument or payment of any kind from any person having or intending to have any business with Company or any of its affiliates. Notwithstanding the foregoing, Contractor may invest in the stock of publicly traded corporations.

5.01     **Privacy of Clients and Customers**. Contractor shall not breach the privacy of any client or customer Company in the course of his Services provided. Contractor shall comply with all privacy and HIPA Laws.

## 5.02        HIPAA COMPLIANCE

**a)** General Compliance: Contractor acknowledges that it is subject to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), the Health Information Technology for

Date Filed 2/6/2024 3:01 PM
Suffolk County Superior Court E-Filed Document ID: E1992A4B-5F1E-4E7J-A4AF-936FA765E34D
Docket Number

Case 1:24-cv-11472-MJJ   Document 1-4   Filed 06/05/24   Page 24 of 43

Economic and Clinical Health Act (HITECH), and all related regulations and guidance, as amended from time to time (collectively referred to as "HIPAA"). Contractor agrees to comply with all applicable requirements of HIPAA, including the Privacy, Security, Breach Notification, and Enforcement Rules at 45 CFR Parts 160 and 164, and any applicable state laws and regulations governing the privacy and security of Protected Health Information (PHI).

**b)** Protected Health Information (PHI): Contractor understands that it may have access to, receive, or create PHI in the course of providing Services under this Agreement. Contractor agrees to use and disclose PHI only as permitted or required by this Agreement or as required by law.

**c)** Permitted Uses and Disclosures: Contractor may use or disclose PHI only for the purposes of performing its obligations under this Agreement, provided that such use or disclosure would not violate HIPAA if done by Company. Contractor may not use or disclose PHI in a manner that would violate the requirements of HIPAA.

**d)** Safeguards: Contractor agrees to implement and maintain appropriate safeguards to prevent unauthorized use or disclosure of PHI, including implementing administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of electronic PHI.

**e)** Reporting of Improper Use or Disclosure: Contractor agrees to report to Company any use or disclosure of PHI not provided for by this Agreement, including breaches of unsecured PHI, within ten (10) days of becoming aware of such use or disclosure. Contractor shall cooperate with Company in investigating the incident and in meeting any applicable breach notification requirements.

**f)** Subcontractors: Contractor shall ensure that any subcontractors that create, receive, maintain, or transmit PHI on behalf of Contractor agree to the same restrictions and conditions that apply to Contractor with respect to such PHI, including implementing reasonable and appropriate safeguards.

**g)** Access, Amendment, and Accounting of Disclosures: Contractor agrees to provide access to PHI in a designated record set to Company or, as directed by Company, to an individual in order to meet the requirements under 45 CFR § 164.524. Contractor agrees to make any amendments to PHI in a designated record set that Company directs or agrees to pursuant to 45 CFR § 164.526. Contractor agrees to maintain documentation of any disclosures of PHI and to provide an accounting of such disclosures to Company or, as directed by Company, to an individual, in accordance with 45 CFR § 164.528.

**h)** Availability of Books and Records: Contractor agrees to make its internal practices, books, and records relating to the use and disclosure of PHI received from, or created or received by Contractor on behalf of Company, available to the Secretary of the U.S. Department of Health and Human Services for purposes of determining Company's compliance with HIPAA.

**i)** Termination: Company may terminate this Agreement if it determines that Contractor has breached a material term of this HIPAA COMPLIANCE section. Upon termination of this Agreement for any reason, Contractor shall return or, if agreed upon by Company, destroy all PHI received from, or created or received by Contractor on behalf of Company, that Contractor still maintains in any form.

     5.03  **Non-Competition after Termination of Services provided**. Contractor hereby agrees not to compete directly or indirectly with the business of the Company or any of its affiliates, within the NYC area or any other area where the company has a location, during the period of Services provided and for a period of three (3) years following the termination of Services provided, notwithstanding the cause or reason for termination. As used herein "not to compete" shall mean that Contractor shall not own, manage, operate, advise, consult, invest in, be Contractor in or otherwise assist a business substantially similar to, or competitive with, the present business of Company or any of its affiliates or such other business activity in which Company or any of its affiliates may engage during the Services provided of

Contractor.

       5.04   **Non-Solicitation of Clients and Customers after Termination of Services provided**. Contractor agrees that following the termination of his Services provided for whatever reason, he shall not, either personally, as an Employee or any other title, consultant or agent for any other entity or person, seek to solicit or carry out any work of the same or similar nature, or offer, develop, license or perform any similar product or service, for any client or customer of Company or any of its affiliates with which Contractor had any contact or dealings while contracted by Company. As used herein "similar product or service" shall mean any product or service similar to that offered, licensed, contemplated or developed by Company or any of its affiliates during the Services provided of Contractor by Company. All records of the accounts of Company and its affiliates, of any nature and whether existing at the time of Contractor's Services provided, procured through the efforts of Contractor or obtained by Contractor from any other source, and whether prepared by Company, Contractor or otherwise, shall be the exclusive property of Company or any of its affiliates regardless of who actually purchased the original book, storage media or other record on which the information is recorded. All such records shall be immediately given to the Company on the termination of Contractor's Services provided, whether or not any dispute exists between Contractor and Company. Contractor shall not transact any business pertaining to suppliers or customers of Company or any of its affiliates which, in any manner, would have or would be likely to have a material adverse effect on Contractor or any of its affiliates.

       5.10   **Non-Solicitation of Other Contractors**. Contractor agrees that he shall not, either personally, or as an employee or any other title, consultant or agent for any other entity or person, solicit or engage or employ any Contractor of Company or any of its affiliates with whom Contractor had any dealings while Contracted by Company. Contractor shall not induce any Contractor of Company or any of its affiliates to terminate his or her Services provided with Company or any of its affiliates, or hire or assist in the hiring of any such Contractor by any other entity or person.

       5.11   **The Consideration for Contractor's Other Obligations**. Contractor has undertaken the obligations set forth in this Article as part of the consideration for the compensation and benefits to be paid and provided to Contractor under this Agreement, and as an additional incentive for Contractor to enter into this Agreement.

       5.12   **Enforcement and Remedies**. Contractor acknowledges that money damages would not be a solely sufficient remedy for any breach of this Article by Company, and Contractor shall be entitled to enforce the provisions of Article by specific performance and injunctive relief as a remedy for any such breach or threatened breach.   Said remedies shall not be deemed the exclusive remedies for a breach or threatened breach of this Article, but shall be
in addition to all remedies available at law or in equity to Company and its affiliates, including recovery of damages from Contractor or the termination of any payments then owing to Contractor under this Agreement.

       5.13   **Reformation**. It is expressly understood and agreed that Company and Contractor consider the restrictions contained in this Article to be reasonable and necessary for the protection of proprietary information and business of Company and its affiliates. Nevertheless, if any of the foregoing restrictions are found by a court having jurisdiction to be unreasonable, or overly broad as to geographic area or time, or otherwise unenforceable, the parties intend for the restrictions set forth in this Article to be modified by such court so as to be reasonable and enforceable and, as so modified by the court, to be fully enforced.

       5.14   **Restrictions**. You may not: (i) remove any copyright, trademark or other proprietary notices from any portion of the Services; (ii) reproduce, modify, prepare derivative works based

upon, distribute, license, lease, sell, resell, transfer, publicly display, publicly perform, transmit, stream, broadcast or otherwise exploit the Services except as expressly permitted by RX2GO; (iii) decompile, reverse engineer or disassemble the Services except as may be permitted by applicable law; (iv) link to, mirror or frame any portion of the Services; (v) cause or launch any programs or scripts for the purpose of unduly burdening or hindering the operation and/or functionality of any aspect of the Services; or (vi) attempt to gain unauthorized access to or impair any aspect of the Services or its related systems or networks.

5.15 **Third-Party Services and Content**. The Services may be made available or accessed in connection with third-party services and content (including advertising) that RX2GO does not control. Once you click on a link to third-party services or content, you will be subject to the terms and conditions and privacy policy of that website, destination, or third-party service provider. RX2GO will not warn you that you have left the Services or that you are subject to the terms and conditions (including privacy policies) of another website, destination, or third-party service provider. You use all links in third-party websites and advertisements at your own risk as these are not part of the Services and are not controlled by RX2GO. You acknowledge that different terms of use and privacy policies may apply to your use of such third-party services and content. RX2GO does not endorse such third-party services and content and in no event shall RX2GO be responsible or liable for any products or services of such third-party providers.

5.16 All sub-contractors, employees of independent contractor, or other parties providing services for Company shall comply with the terms of article 5. Company may provide a form similar to the one herein that must be executed by anyone providing services for Company. Regardless if the same is executed, Contractor shall be responsible for any breaches.

## ARTICLE 6: RESOLVING DISPUTES AND SERVICES PROVIDED / RELATIONSHIP PROBLEMS

6.01 **Company's Relief**. Contractor acknowledges that actual or threatened violations of Article 5 would give rise to irreparable injury to Company or any of its affiliates, inadequately compensable in damages and, therefore, Company and its affiliates shall be entitled to seek and obtain injunctive, consequential, punitive and other relief against the breach or threatened breach of Contractor's obligations and undertakings thereunder, in addition to other legal remedies which may be available. Whether the Contractor used a company name, or signed as an individual, the contractor may be held individually responsible for damages and by signing this agreement, each company owner guarantees and otherwise agrees to be held personally responsible for all damages.

6.02 **FEES/FINES**. Contractor agrees to pay the following penalties and fees, as applicable:

a) Up to $1,000 for failing to return undelivered packages on time, which puts patient health at risk and may result in the termination of this Agreement, and failure to return any of Company's collected co-pays, ice packs, fridges, or any of Company's equipment;

b) Up to $1,000 for accepting a route and failing to show up for the assigned delivery, which puts patient health at risk and may result in the termination of this Agreement;

c) Up to $1,000 for performing other deliveries while providing Services to Company that could potentially jeopardize patient safety, which puts patient health at risk and may result in the termination of this Agreement;

d) Up to $1,000 for being late to pick up a route, which puts patient health at risk and

constitutes a violation of this Agreement.

All the fees and fines may be automatically deducted from monies that would have been due to the Contractor by the Company with notice, and/or if no monies are due then the same may be recovered through legal proceedings if not paid upon notice to contractor.

        6.03   **Legal Fees.** If any legal action is necessary or brought in any court or arbitration proceeding to enforce or interpret this Agreement, RX2GO shall be entitled to reasonable attorneys' fees, costs and necessary expenses, in addition to any other relief to which such party may be entitled, regardless of whether RX2GO is the prevailing party or not the prevailing party.

## ARTICLE 7: TERMINATION OF SERVICES

        7.01   **Voluntary Resignation by Contractor.** Services under this Agreement may be terminated by Contractor by giving written notice to Company at least thirty days in advance of the termination date stated in such notice. In the event of a termination of services pursuant to this provision, the Contractor shall continue to work for Company until the stated termination date, unless otherwise requested by the Company. The compensation of the Contractor shall be adjusted as of the date services terminate.

        7.02   **Voluntary Termination by Company.** Services under this Agreement may be terminated by the Company by giving written notice to the Contractor at least      twenty-four hours in advance of the termination date stated in such notice. In the event of a termination of services pursuant to this provision, Contractor may continue to work for Contractor until the stated termination date or may terminate his services prior to said date. The compensation of the Contractor shall be adjusted as of the date services terminate. If Contractor ceases to have access to the online platform or app, and otherwise does not receive or have an option to accept deliveries, then the Contractor shall be deemed terminated.

        7.03   **Termination by Contractor for Cause.** Company may terminate the services of Contractor for cause by written notice to Contractor stating the specifics of the cause for termination. The causes for termination include: a conviction of a felony, any act involving moral turpitude, or a misdemeanor where imprisonment is imposed; commission of any act of theft, fraud, dishonesty or falsification of any Services provided or business records of Company or any of its affiliates; misconduct in connection with the performance of any of Contractor's duties including without limitation misappropriation of funds or property of Company or any of its affiliates, or securing or attempting to secure personally profit in connection with any transaction entered into on behalf of Company; any violation of law or regulations to which Contractor or any of its affiliates is subject; deliberate destruction of any property belonging to Company or any of its affiliates; harassment of a work colleague or customer; improper disclosure of confidential or proprietary information of Company or any of its affiliates; willful actions that Contractor knows or should know may have a serious detrimental effect on the business or reputation of Company or any of its affiliates; serious or repeated failure to follow reasonable instructions of Company; chronic absenteeism, or failure or inability to perform any reasonable assigned duties after written notice from Company and a reasonable opportunity to cure; or a material breach by Contractor of any provision of this Agreement which is not cured within 30 days written notice. For purposes hereof, termination for "cause" shall not include any act or failure to act on Contractor 's part if done or omitted to be done by him in demonstrable good faith and with the reasonable belief that his act or omission was in the best interest of Company or any of its affiliates or pursuant to an express policy of Company at the time of such act or omission. In the event Company wishes to investigate any alleged misconduct, Company may, after discussing the proposal of suspension with Contractor and considering Contractor's views, suspend Contractor without pay.

7.04   **Obligations of Contractor upon Termination**. Upon the termination of Contractor 's services for any reason, or at any other time upon the request of Contractor , Contractor shall immediately return to Company all information, material or property including without limitation computer disks, printouts, manuals, reports, letters, memos, plans, diagrams, security cards, keys, and laptop computers either belonging to or the responsibility of Contractor and all copies of that material, which are in Contractor 's possession or under his control.

## ARTICLE 8: MISCELLANEOUS

8.01   **Notices**. All notices, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been properly given if delivered by hand or by Federal Express courier or by registered or certified mail, return receipt requested, with postage prepaid, to Contractor or Company, as the case may be, at their addresses first above written, or at such other addresses as they may designate by notice given hereunder.

8.02   **Disclaimer**. RX2GO DOES NOT CONTROL, ENDORSE OR TAKE RESPONSIBILITY FOR ANY USER CONTENT OR THIRD-PARTY CONTENT AVAILABLE ON OR LINKED TO BY THE SERVICES. RX2GO CANNOT AND DOES NOT REPRESENT OR WARRANT THAT THE SERVICES OR SERVERS ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS.

8.03   **Limitation of Liability.** RX2GO SHALL NOT BE LIABLE FOR INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOST DATA, PERSONAL INJURY, OR PROPERTY DAMAGE RELATED TO, IN CONNECTION WITH, OR OTHERWISE RESULTING FROM ANY USE OF THE SERVICES, REGARDLESS OF THE NEGLIGENCE (EITHER ACTIVE, AFFIRMATIVE, SOLE, OR CONCURRENT) OF RX2GO, EVEN IF RX2GO HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

8.04   RX2GO SHALL NOT BE LIABLE FOR ANY DAMAGES, LIABILITY OR LOSSES ARISING OUT OF: (i) YOUR USE OF OR RELIANCE ON THE SERVICES OR YOUR INABILITY TO ACCESS OR USE THE SERVICES; OR (ii) ANY TRANSACTION OR RELATIONSHIP BETWEEN YOU AND ANY THIRD-PARTY PROVIDER, EVEN IF RX2GO HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. RX2GO SHALL NOT BE LIABLE FOR DELAY OR FAILURE IN PERFORMANCE RESULTING FROM CAUSES BEYOND RX2GO'S REASONABLE CONTROL. YOU ACKNOWLEDGE THAT THIRD-PARTY PROVIDERS PROVIDING TRANSPORTATION SERVICES REQUESTED THROUGH SOME RX2GO SERVICES MAY OFFER PEER-TO-PEER TRANSPORTATION SERVICES AND MAY NOT BE PROFESSIONALLY LICENSED OR PERMITTED. YOU ACKNOWLEDGE THAT THIRD-PARTY PROVIDERS ARE NOT OSTENSIBLE AGENTS, APPARENT AGENTS, ACTUAL AGENTS, OR EMPLOYEES OF RX2GO.

8.05   **Indemnity**. You agree to indemnify and hold RX2GO and its affiliates and their officers, directors, employees, and agents harmless from and against any and all actions, claims, demands, losses, liabilities, costs, damages, and expenses (including attorneys' fees), arising out of or in connection with: (i) your driver Services or other services or goods obtained through your use of RX2GO programs, facilities, items, and/or communications; (ii) your breach or violation of any of these Terms; (iii) RX2GO's use of your User Content; or (iv) your violation of the rights laws, and/or policies of any third party, including Third-Party Providers; and (v) Contractors and sub-contractors violation of any state or federal laws.

8.06   **Entire Agreement**. This Agreement contains the whole and entire agreement between the parties with respect to the subject matter hereof. Each party to this Agreement acknowledges that no representation, inducement, promise or agreement, oral or written, has been made by either party or by anyone acting on behalf of either party, which is not embodied herein.

8.07   **Changes Must Be In Writing**. This Agreement may not be altered, amended, changed, modified, waived or terminated in any respect or particular unless the same shall be in writing signed by the party to be bound.

8.08   **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

8.09   **No Agency or Authority to Contract**. Nothing in this Agreement shall be deemed to create a partnership or agency relationship between Contractor and Company or to make Contractor jointly liable with Company for any obligation arising out of the activities or services contemplated by this Agreement. Contractor has no right to enter into a contract or otherwise obligate Company unless the Contractor gives express written authorization to do so.

8.10   **Affiliates**. As used in this Agreement the term "affiliate" shall mean any entity which owns or controls, is owned or controlled by, or is under common ownership of control with the Company.

8.11   **Severability**. If any provisions of this Agreement shall be unenforceable or invalid, such unenforceability or invalidity shall not affect the remaining provisions of this Agreement.

8.12   **Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.   Affiliates of Company shall be third party beneficiaries of Contractor's obligations under this Agreement. Contractor must personally perform the duties and responsibilities of Contractor under this Agreement and no subcontracting or assignment by Contractor is permissible unless the Company shall consent thereto in writing.

8.13   **Review by Attorney/Waiver**. This document is not intended to serve as legal advice or as a substitute for professional legal counsel. It is always recommended that you consult with an attorney to ensure the contract meets your specific requirements and adheres to all applicable laws and regulations. By signing this agreement you agree that you understand all the terms and responsibilities herein, and that the same are reasonable.

**IN WITNESS WHEREOF**, the parties have executed this Agreement the date first above written.

VICTORIA NYC 1 INC DBA RX2GO.

By _____
   Justin Quinn

DocuSigned by:

*Justin Quinn*

_____
4B05BA952B2D45E...
Name/Signature (NOTARY  NEXT PAGE)

STATE OF NEW YORK        )
                         ) ss:
COUNTY OF                )

11

On the _____ day of _____ in the year 20___ before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
Notary Public

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| | | | COUNTY | |
|---|---|---|---|---|
| PLAINTIFF(S): | JUSTIN QUINN | | | Suffolk |
| ADDRESS: | Groton, MA | | | |
| | | DEFENDANT(S): | VICTORIA NYC 1 INC., RX2GO MA INC., ERKIN SATTAROV | |
| | | and DONIYOR SATTAROV | | |
| ATTORNEY: | Brant Casavant | | | |
| ADDRESS: | Fair Work, P.C., 192 South Street, Suite 450 Boston, MA 02111 | ADDRESS: | | |
| | | | | |
| BBO: | 672614 | | | |

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A01 | Services, Labor & Materials | F | ☒ YES ☐ NO |

*If "Other" please describe:

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ........................................................ $ _____
2. Total doctor expenses ........................................................ $ _____
3. Total chiropractic expenses ................................................ $ _____
4. Total physical therapy expenses ......................................... $ _____
5. Total other expenses (describe below) ................................ $ _____
                                    Subtotal (A): $ _____
B. Documented lost wages and compensation to date .......................................... $ _____
C. Documented property damages to dated ....................................................... $ _____
D. Reasonably anticipated future medical and hospital expenses ......................... $ _____
E. Reasonably anticipated lost wages ............................................................... $ _____
F. Other documented items of damages (describe below) ................................... $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                    TOTAL (A-F):$ _____

#### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

                                    TOTAL: $   To be determined

Signature of Attorney/Pro Se Plaintiff: X _____          Date: 02/06/2024

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _____          Date: 02/06/2024

| **Summons** | CIVIL DOCKET NO.<br>2484CV00353 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br><br>Justin Quinn, et al.<br><br>Plaintiff(s)<br>vs.<br>Victoria NYC 1 Inc., d/b/a Rx2Go,<br>Rx2Go MA Inc., Erkin Sattarov, and<br>Doniyor Sattarov, individually<br>Defendant(s) | John E. Powers III      Acting<br>                        Clerk of Courts<br>Suffolk          County<br>COURT NAME & ADDRESS:<br>Suffolk Superior Civil Court<br>Three Pemberton Square<br>Boston, MA. 02108 |
|---|---|

THIS SUMMONS IS DIRECTED TO  <u>Rx2Go MA Inc.</u>      (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this Summons and the original Complaint has been filed in the                    Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the Court may decide the case against you and award the Plaintiff everything asked for in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

**2. How to Respond.**

To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff's attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business,  *Suffolk Superior* Court 3 Pemberton Square, Boston, MA  (address), by mail, in person, or electronically through 02109 the web portal www.eFileMA.com if the Complaint was e-filed through that portal, **AND**

b) Delivering or mailing **a copy** of your response to the Plaintiff's attorney/Plaintiff at the following address: Brant Casavant, Fair Work P.C., 192 South St Suite 450, Boston, MA 02111

**3. What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff (referred to as "counterclaims") that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Court no more than 10 days after sending your Answer.

3. (cont.) Another way to respond to a Complaint is by filing a "Motion to Dismiss," if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Rule 12 of the Massachusetts Rules of Civil Procedure**. If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

www.mass.gov/law-library/massachusetts-superior-court-rules

**4. Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

**5. Required Information on All Filings.**

The "Civil Docket No." appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon.  Michael D. Ricciuti                , Chief Justice on  February 27        , 20 24 . (Seal)

Acting Clerk

**Note:** The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

---

## PROOF OF SERVICE OF PROCESS



**Suffolk County Sheriff's Department** • 132 Portland Street, Boston, MA 02114 • (617) 704-6999

*Suffolk, ss.*

April 2, 2024

I hereby certify and return that on 3/28/2024 at 7:00 PM I served a true and attested copy of the Summons, Complaint, Interrogatories, Request for Production of Documents, Cover Sheet, Tracking Order in this action in the following manner: To wit, by delivering in hand to Stanislav Tsynin, Route Planner Manager, agent and person in charge at the time of service for Rx2Go MA Inc. at 100 Business Street Hyde Park, MA 02136 . In this service hereof it was necessary and I actually used a motor vehicle 10 miles.   Attest/Copies ($5.00) Basic Service Fee (IH) ($30.00) Conveyance ($3.00) Postage and Handling ($1.00) Travel ($6.40) Total: $45.40

Deputy Sheriff  Jean Vrigneau

*Deputy Sheriff*

Date:

**4**

# BUCKS SHERIFF'S RETURN

Case #:         **2024-91596**
Commenced: **4/5/2024**
Caption:       **QUINN, JUSTIN**
                **vs.**
                **SATTAROV, ERKIN**

## SERVICE REQUEST

Request #:         **49283 (1 of 1)**
Request Type:   **Out of State   SUMMONS, COMP, INTERROGS, REQ FOR PRO**
Entered:           **4/5/2024 by COB\jlsommers**
Requested By:   **JUSTIN QUINN**
                **UNKNOWN**

Special Instructions:
Service To:         **(1) ERKIN SATTAROV**
                **(2) DONIYOR SATTAROV**

Zone:         **2**
Address:     **2391 OLD BRISTOL ROAD**
              **SOUTHAMPTON, PA 18966**
Municipality: **LowerSouthampton TOWNSHIP**
            **Pick Up** on **4/8/2024 1:27 PM** by deputy **Deputy John Baran**

            **Served** on **4/9/2024 10:40 AM** by deputy **Deputy John Baran**

- **Defendant personally served (A)(i)**

Served To: **Doniyor Sattarov**
Note: **Doniyor also accepted service for his brother, Erkin Sattarov.**

# BUCKS SHERIFF'S RETURN



Case #:        2024-91596
Commenced: 4/5/2024
Caption:       QUINN, JUSTIN
               vs.
               SATTAROV, ERKIN

## S49283                    S49283

# SERVICE REQUEST

Request #:        **49283 (1 of 1)**
Request Type:     **Out of State   SUMMONS, COMP, INTERROGS, REQ FOR PRO**
Entered:          **4/5/2024 by COB\jlsommers**
Due by:           **5/3/2024**
Requested By:     **JUSTIN QUINN**
                  **UNKNOWN**

Special Instructions:
Service To:       **(1) ERKIN SATTAROV**
                  **(2) DONIYOR SATTAROV**

Zone:    **2**
Address: **2391 OLD BRISTOL ROAD**
         **SOUTHAMPTON, PA 18966**

*SERVED*

*85-24-02333*

*4/9 @ 1033 HRS*

**FAIR**WORK PC | EMPLOYMENT LAW

March 26, 2024

Bucks County Sheriff's Office
100 North Main Street
Doylestown, PA 18901



Case #: 2024-91598-0000      13619620
Main (Public)
Code: 0         Judge:
Rcpt: Z2798936  4/5/2024 10:10:23 AM

RE:   Justin Quinn, et al. v. Victoria NYC 1 Inc., d/b/a Rx2Go, Rx2Go MA Inc.,
      Erkin Sattarov, and Doniyor Sattarov, individually
      Suffolk Superior Court, Docket No. 2484CV00353

Dear Sir or Madam:

      I am enclosing the following materials for service on (1) Erkin Sattarov and (2)
Doniyor Sattarov, both of whom are located at 2391 Old Bristol Rd, Southampton, PA
18966:

      (1) Summons;
      (2) Complaint;
      (3) Civil Tracking Order;
      (4) Plaintiff's First Set of Interrogatories; and
      (5) Plaintiff's First Request for Production of Documents.

      A check for the $360.00 service fee is enclosed. Please send the return of service to
my attention; a self-addressed envelope is enclosed for your convenience. Thank
you.

                              Sincerely,

                              /s/ Brant Casavant
                              Brant Casavant

Enclosures.

| **Summons** | CIVIL DOCKET NO.<br>2484CV00353 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

CASE NAME:

Justin Quinn, et al.

Plaintiff(s)

vs.

Victoria NYC 1 Inc., d/b/a Rx2Go,
Rx2Go MA Inc., Erkin Sattarov, and
Doniyor Sattarov, individually

Defendant(s)

John E. Powers III    Acting
Suffolk        Clerk of Courts
           County

COURT NAME & ADDRESS:
Suffolk Superior Civil Court
Three Pemberton Square
Boston, MA. 02108

THIS SUMMONS IS DIRECTED TO ___Erkin Sattarov___ (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this Summons and the original Complaint has been filed in the _____ Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the Court may decide the case against you and award the Plaintiff everything asked for in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

**2. How to Respond.**

To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff's attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business, Suffolk Superior Court 3 Pemberton Square, Boston, MA 02108 (address), by mail, in person, or electronically through the web portal www.eFileMA.com if the Complaint was e-filed through that portal, **AND**

b) Delivering or mailing **a copy** of your response to the Plaintiff's attorney/Plaintiff at the following address: Brant Casavant, Fair Work P.C., 192 South St Suite 450, Boston, MA 02111

**3. What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff (referred to as "counterclaims") that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Court no more than 10 days after sending your Answer.

3. **(cont.)** Another way to respond to a Complaint is by filing a "Motion to Dismiss," if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Rule 12 of the Massachusetts Rules of Civil Procedure**. If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

www.mass.gov/law-library/massachusetts-superior-court-rules

**4. Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

**5. Required Information on All Filings.**

The "Civil Docket No." appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. ___Michael D. Ricciuti___ , Chief Justice on ___February 27___ , 20 _24_ . (Seal)

Acting Clerk _____

**Note:** The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

---

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ , I served a copy of this Summons, together with a copy of the Complaint in this action, on the Defendant named in this Summons, in the following manner (See Rule 4(d)(1-5) of the Massachusetts Rules of Civil Procedure):

_____

_____

_____

Dated: _____          Signature: _____

**N.B.   TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

Date:

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                                    SUPERIOR COURT

|  |  |
|---|---|
| JUSTIN QUINN, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>VICTORIA NYC 1 INC., d/b/a Rx2Go, RX2GO MA INC., ERKIN SATTAROV, and DONIYOR SATTAROV, individually,<br><br>    Defendants. | CIVIL ACTION NO.: 2484CV00353 |

### NOTICE OF APPEARANCE

NOW COME the defendants, Victoria NYC 1 Inc. d/b/a Rx2Go, Rx2Go MA Inc., Erkin Sattarov, and Doniyor Sattarov ("Defendants"), by and through counsel, DENNEHY LAW, and submit this Notice of Appearance of John W. Dennehy, P.C. for the Defendants.

Respectfully submitted,

VICTORIA NYC 1 INC., RX2GO MA INC., ERKIN SATTAROV, AND DONIYOR SATTAROV

By Their Attorneys,

*/s/ John W. Dennehy*

John W. Dennehy, P.C., BBO No. 658247
DENNEHY LAW
127 Main Street, Suite 1
Nashua, NH 03060
Telephone: (603) 943-7633
jdennehy@johnwdennehy.com

Dated: May 8, 2024

## <u>CERTIFICATE OF SERVICE</u>

This shall acknowledge that I, John W. Dennehy, hereby caused to serve, on May 8, 2024, via ECF to all registered users, and/or via email, copies of this pleading upon all counsel of record as follows:

Brant Casavant, BBO #672614
FAIR WORK P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel. (617) 231-6777
brant@fairworklaw.com

*/s/ John W. Dennehy*

_____
John W. Dennehy

Date Filed 5/8/2024 1:58 PM
Superior Court - Suffolk
Docket Number 2484CV00353   Case 1:24-cv-11472-MJJ   Document 1-4   Filed 06/05/24   Page 41 of 43

5

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                                    SUPERIOR COURT

|  |  |
|---|---|
| JUSTIN QUINN, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| VICTORIA NYC 1 INC., d/b/a Rx2Go, RX2GO MA INC., ERKIN SATTAROV, and DONIYOR SATTAROV, individually, | ) ) ) ) |
| Defendants. | ) ) |

CIVIL ACTION NO.: 2484CV00353

A

kg

### STIPULATION AND ACCEPTANCE OF SERVICE

NOW COME the parties, plaintiff, Justin Quin ("Plaintiff"), and defendants, Victoria NYC 1 Inc., Rx2Go MA Inc., Erkin Sattarov, and Doniyor Sattarov ("Defendants"), hereby submit this Stipulation in the above-styled case. The Defendants agree to accept service of the Complaint filed in this matter by the Plaintiff on or about May 5, 2024. Further, Plaintiff and Defendant hereby stipulate and agree that the Defendants' deadline to respond to the Complaint shall be June 5, 2024. By accepting service in this manner, Defendants do not waive any rights, arguments, or defenses in connection with this lawsuit.

Respectfully submitted,

VICTORIA NYC 1 INC., RX2GO MA INC., ERKIN SATTAROV, AND DONIYOR SATTAROV

By Their Attorneys,


*/s/ John W. Dennehy*
_____
John W. Dennehy, P.C., BBO No. 658247
DENNEHY LAW
127 Main Street, Suite 1
Nashua, NH 03060
Telephone: (603) 943-7633
jdennehy@johnwdennehy.com


  And


JUSTIN QUINN

By His Attorneys,

/s/ Brant Casavant
_____
Brant Casavant, BBO #672614
FAIR WORK P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel. (617) 231-6777
brant@fairworklaw.com

Dated: May 8, 2024

2

## **CERTIFICATE OF SERVICE**

This shall acknowledge that I, John W. Dennehy, hereby caused to serve, on May 8, 2024, via ECF to all registered users, and/or via email, copies of this pleading upon all counsel of record as follows:

Brant Casavant, BBO #672614
FAIR WORK P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel. (617) 231-6777
brant@fairworklaw.com


*/s/ John W. Dennehy*

_____
John W. Dennehy

3